UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ESCOTERICA BAKER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 24-1060** |
| **THE ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND** | **SECTION: KWR** |

**ORDER AND REASONS**

This matter is before the Court on consent of the parties. R. Doc. 17. Before the Court is Defendant's **Motion for Partial Dismissal (R. Doc. 24)**, seeking dismissal of the Plaintiff's race and gender discrimination claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the Louisiana Employment Discrimination Law ("LEDL"), pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion is Opposed. R. Doc. 25.

I.  **Introduction**

   A.  **Factual Summary**

Plaintiff Escoterica Baker ("Baker") began her employment with the Tulane National Primate Center ("TNPC") in 2007 and was later promoted to a Supervisor of Animal Care. R. Doc. 1 at 3, ¶¶9-10. According to Baker, she did not receive a pay raise in February 2023. *Id.* at 5, ¶22. Baker alleges that, during this time, Kaz Kean, "a supervisor" who was later promoted to "Assistant Manager," earned more money than she did. *Id.*, ¶25.

Baker claims that in February 2023, she informed her manager, Reafa Bickham, and the Assistant Director, Cathy Tsagournos, of her belief that "Caucasian hires [were] getting top pay" and that "new hires (all white) were making more income than [her]." R. Doc. 1 at 5, ¶23-26. Baker has since amended her complaint to allege that she last "complained to Ms. Bickham about the disparate pay of black and white employees [on] or about June 2, 2023." R. Doc. 21 at 6, ¶26.

1

On June 26, 2023, a white male Animal Care Technician discovered sexist graffiti written on the inside of his locker in the male locker room. R. Doc. 21 at 3, ¶11. The next day, a racial slur was written on a black male employee's locker located in the same building. *Id.* at 4, ¶13. The incidents were reported to the Tulane Police Department ("TUPD") and Tulane determined that Baker had written the sexist and racist comments on her subordinates' lockers, which she denies. *Id.*, ¶¶16-17. Baker contends that she was falsely accused and subjected to different treatment because of her race, African American, and gender, female. *Id.* at 7, ¶¶34-36. Thereafter, her employment with TNPC was terminated on July 25, 2023. *Id.* at 4, ¶16.

On September 28, 2023, Baker filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination on the basis of race, color, sex, and retaliation beginning February 1, 2023. R. Doc. 24-2 at 1-2. Baker alleged that she was paid less than "Caucasian employees" and terminated after an investigation into the racist and sexist graffiti concluded Baker was responsible. *Id.* After receiving her Right to Sue letter on March 4, 2024, Baker filed the subject lawsuit on April 26, 2024. R. Doc. 1 at 2, ¶4. After Tulane moved to dismiss her Original Complaint on July 19, 2024, Baker filed an Amended Complaint with Tulane's consent on August 26, 2024. R. Doc. 21.

**B. Subject Motion**

On September 10, 2024, Tulane filed another Motion to Dismiss, seeking dismissal of Baker's race and gender discrimination claims under Title VII, § 1981, and LEDL. R. Doc. 24 at 1. First, Tulane contends that Baker's Amended Complaint has several factual allegations that were not administratively exhausted and cannot form the basis of her claims arising under Title VII. R. Doc. 24-1 at 4. Second, Tulane contends that because these events took place more than

four years before the subject lawsuit was filed, they are untimely and cannot support Baker's claims brought pursuant to either the LEDL or § 1981. *Id.*

Tulane further contends that Baker's properly exhausted and timely asserted claims for unequal pay and termination also fail. R. Doc. 24-1 at 4. First, Tulane contends that Baker's unequal pay claim fails because she does not allege that any of the individuals who purportedly received more pay or favorable treatment were individuals who worked in a position requiring equal skill, effort, and responsibility under working conditions like hers. *Id.* Second, Tulane contends that Baker's termination claim was due to graffiti incidents which are legitimate business reasons. *Id.* Tulane suggests that Baker's attempt to raise a disparate impact claim arising from Tulane's failure to terminate a white male for calling a co-worker "stupid", two years before Baker's termination, is not sufficient as a matter of law to state a plausible claim for relief. *Id.* Therefore, Tulane contends that Baker has failed to state a colorable claim for race and gender discrimination under Title VII and §1981, and that these claims should be dismissed with prejudice. *Id.* at 4-5.

Baker opposes Tulane's Motion to Dismiss, and claims that she was wrongfully terminated based on the false accusation of two male subordinates. R. Doc. 25 at 3. She contends that without a good faith investigation of the incidents and equal treatment she was required to submit a handwriting analysis, but the men were not. *Id.* Baker also challenges the sufficiency of the investigation because men, including male janitors, had access to the men's locker room but were not investigated. *Id.* According to Baker, she complained to her manager from February 2023 to June 2023 about her pay and the pay difference of other black employees and was told that she had maxed out. *Id.* at 4-5. Baker contends that her allegations about a pattern or practice discrimination may have evidentiary value even if the allegations from 2017 are time barred. *Id.*

3

at 7. Baker also contends that her allegations of equal pay discrimination based on race and gender are sufficiently pled. *Id.* at 12. She also contends that her allegations of race and gender based disparate treatment are sufficiently pled such that the Court should deny Tulane's request for dismissal of these claims. *Id.* at 13-14.

## II. Standard of Review

Under Rule 12(b), the Court may dismiss a complaint if it lacks jurisdiction over the subject matter or for failure to state a claim upon which any relief may be granted. *See* Fed. R. Civ. P. 12(b)(1). See also Fed. R. Civ. P. 12(b)(6). The same standard is applied for a motion to dismiss brought under either Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim for which relief can be granted. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guidry.*, 512 F.3d at 180 (citations omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 677-78 (quoting *Twombly*, 550 U.S. at 570). In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. See *id*.

### III. Analysis

#### A. Claims of Pattern or Practice of Race Discrimination

Tulane contends that Baker's Amended Complaint points to several alleged incidents she claims occurred nearly seven years ago in November and December 2017. R. Doc. 24-1 at 6. According to Tulane, these factual allegations were not included in Baker's EEOC charge and are time-barred under Title VII and §1981's generous four-year statute of limitations. *Id.* Tulane also contends that Baker's attempt to provide evidence that her 2017 claims were submitted administratively should fail because they are not central to her complaint and, as an individual, she cannot bring a pattern or practice claim. R. Doc. 27 at 3-4.

Baker acknowledges that these discriminatory acts could be time-barred as a claim but contends that the alleged actions by her supervisors and manager in May and November 2017

provide a history of the pattern and practice of race discriminatory actions. R. Doc 25 at 7. According to Baker, these alleged instances support her underlying protected activities and her retaliation claim. *Id.* at 7-8. Baker also contends that a pattern or practice claim is not a separate cause of action but a method of showing disparate treatment. *Id.* Finally, Baker contends she referenced the 2017 incidents of race discrimination in her rebuttal to the assertions of the defendant and intends to introduce evidence of a "pattern and practice" of discrimination to carry her burden of proof in this individual employment discrimination case. *Id.*

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1).

"A 'pattern or practice' claim is not a separate and distinct cause of action under Title VII, but is another vehicle by which disparate treatment may be shown." *Martin v. Loyola Univ.*, No. 04-2712, 2006 WL 8456136, at *2 (E.D. La. Jun. 6, 2006) (Knowles, M.J.) (citation omitted). "The typical pattern or practice discrimination case is brought either by the government or as a class action." *Martin*, No. 04-2712 at *2.

The pattern and practice method of proof is almost exclusively used in class actions. *Adams v. United Association of Journeymen and Apprentices of the Plumbing and Pipefitting*, 469 F. Supp.3d 615, 633 (M.D. La. Jun. 29, 2020) (deGravelles, J.). The Supreme Court has emphasized the differences between an individual claim of disparate treatment and a pattern or practice claim of discrimination: "The inquiry regarding an individual's claim is the reason for a particular employment decision, while 'at the liability stage of a pattern-or-practice trial the focus often will not be on individual hiring decisions, but on a pattern of discriminatory decision making.'" *Cooper*

*v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984) (quoting *Int'l Broth. of Teamsters v. U.S.*, 431 U.S. 324, 360 n. 46 (1977)).

"Therefore, courts have concluded that the pattern and practice method of proof may not be used in private non-class suits." *Adams*, 489 F.Supp.3d at 633. *See, e.g., Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 760 (4th Cir. 1998), vac. on other grounds, 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999). The "pattern-or-practice method of proof [is] not available in private, non-class action lawsuits," and it is not a separate cause of action. *Id.* (quoting *Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir. 2003)).

Baker then suggests that notice of these incidents was given during the administrative phase in response to Tulane's position. R. Doc. 25 at 7-8. In support of her position, Baker attaches a copy of a letter from her counsel to the EEOC investigator referencing the 2017 incidents and seemingly concedes that if they formed the basis of a different claim that they "could" be prescribed. *Id.* See R. Doc. 25-1. Baker seemingly believes that these incidents might be able to form the basis of her claim. For the reasons explained below, if the 2017 alleged incidents of discrimination are offered to raise additional claims, they are time-barred.

According to the Amended Complaint, Baker alleges that in November 2017, Stacey Schwankhart asked her how she "interacted with people that she lived with and how she handled situations that may occur." R. Doc. 21 at 6-7, ¶27. Because Baker felt this question was "condescending" and "racially motivated," she claims she contacted human resources to complain about three white women: (1) Stacey Schwankhart, (2) Cathy Tsgournos, and (3) Health McKay. *Id.*, ¶29. Baker alleges that after these women received notice of her complaints on December 11, 2017, the women accused Baker of slamming a door in retaliation for her complaint. *Id.*, ¶31. Baker alleged in her Amended Complaint that she filed a rebuttal to Tulane's position which she

states, "provided additional factual allegations in support of her claims against Defendant." *Id.* at 2, ¶4. However, she did not attach the document to the Amended Complaint but instead attached it to her opposition to the subject Motion. *See* R. Doc. 25-1.

While courts typically cannot consider evidence outside of the pleadings in the context of a motion to dismiss, a court may consider "documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308, 322 (2007) (citation omitted). The United States Court of Appeals for the Fifth Circuit has established that a court's consideration of documents attached to a motion to dismiss is limited "to documents that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (emphasis added) (citation omitted).

Contrary to Tulane's representation, the rebuttal is referenced or incorporated into the Amended Complaint and could be considered if it is central to Baker's claim. R. Doc. 21 at 2, ¶4. In this instance, as referenced above, these instances are not central to Baker's current claim. Further even if they could somehow be interpreted as central, which they are not, if these facts were to form claims they would be prescribed.

Title VII claims, whether they are based on allegations of disparate treatment, disparate impact, hostile work environment, or retaliation, are subject to a statute of limitations that is tied to an administrative complaint process. That means that a plaintiff must first file a discrimination charge with the Equal Employment Opportunity Commission (EEOC) within 300 days of an alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). Upon obtaining a right to sue letter from the EEOC, a plaintiff then has ninety days to file a Title VII claim in district court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). Alleged unlawful employment acts that occur more than 300 days prior the filing of an EEOC charge are generally time-barred.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) ("a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U.S.C. § 2000e–5(e)(1)").

Somewhat similarly, complaints of unlawful employment practices that are not included in an EEOC charge cannot generally be raised in federal court. But, whether a claim has been sufficiently raised in an EEOC charge is a not a straightforward assessment. While "the scope of an EEOC complaint should be construed liberally," claims that are not specifically raised in an EEOC charge and could not "reasonably be expected to ... grow out of [a] charge of discrimination" cannot be pursued in federal court due to a failure to exhaust administrative remedies. *Patton v. Jacobs Engineering Group, Inc.,* 874 F.3d 437, 444 (5th Cir. 2017) (citations omitted). See also *Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 Fed.Appx. 414, 416 n.1 (5th Cir. 2016) (claims for which a plaintiff has not exhausted his administrative remedies are barred from review in federal court).

As for race discrimination claims under § 1981, there is no administrative exhaustion requirement, and the limitations period is generally four years. *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 381, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004). Where, however, a § 1981 race discrimination claim is based on an alleged failure to promote, the limitations period may be as little as two years. *See Fonteneaux v. Shell Oil Co.*, No. 05-4033, 2007 WL 7210406, *2 (S.D. Tex. Dec. 14, 2007) (Ellison, J.) ("For § 1981 claims based on a employer's failure to promote an employee," a two year statute of limitations applies if the promotion at issue provided "the opportunity for a new and distinct relation between the employer and employer;" otherwise, a four year statute of limitations applies), aff'd, 289 F. App'x 695 (5th Cir. 2008).

Baker alleges that she filed her charge of discrimination with the EEOC and the Louisiana Commission on Human Rights on October 2, 2023. R. Doc. 21 at 2, ¶4. She included a reference to the November 2017 incidents in her rebuttal, and she received a notice of her right to sue on April 5, 2024. *Id.*

Notably, Baker was required to file a charge arising of the 2017 incidents either 180 or 300 days after the alleged discriminatory act. Even assuming that Baker's submission in January 2024 was an attempt to exhaust her claims from these incidents, they are untimely both under Title VII (charge file deadline May 2018) and §1981 (charge file date deadline) December 2021.

### B. Adequacy of Race or Gender Discrimination Claim

#### *1. Sufficiency of Race and Gender Discrimination Claim – Unequal Pay*

Tulane contends that the facts as alleged by Baker in the Amended Complaint are insufficient to state a *prima facia* case of discrimination. R. Doc. 24-1 at 8-10. Tulane contends that while Baker alleges that she was terminated and paid less than others because of her race or gender, she only points to ambiguous group of unnamed "men" and "Caucasians" and a single alleged comparator. *Id.* This alleged comparator, Kaz Kean, is a supervisor who allegedly received more compensation than Baker. *Id.* Tulane contends that this allegation is inadequate to create a reasonable inference beyond the speculative level that Baker was paid less. *Id.* Tulane further contends that Baker has failed to set forth facts in the Amended Complaint that Tulane's decision to terminate her was based on either her protected status as African American or based on her gender. *Id.* at 17.

Baker contends that her race and gender discrimination claims are plausible. R. Doc. 25 at 8. Baker contends that she has sufficiently alleged that she was subjected to disparate

compensation practices compared to "Caucasian employees" in her department. *Id.* at 11. Baker contends that she offered the name of Mr. Kean as one of "those comparators." *Id.*

To establish a *prima facie* case of discriminatory compensation, Baker must allege: (1) that she is a member of a protected class; and (2) that she was paid less than a non-member of that class for work requiring substantially the same responsibility. *Tillman v. Southern Wood Preserving of Hattiesburg, Inc.*, 250 Fed.Appx. 622, 625 (5th Cir. 2007) (quoting *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984)); *Myers v. Crestone Intern.*, LLC, 121 Fed.Appx. 25, 29 (5th Cir. 2005). She must also prove the employer's intent to discriminate. *Earle v. Aramark Corp.*, 247 Fed.Appx. 519, 523 (5th Cir. 2007) (finding that in a case involving disparate treatment based upon unequal pay, the plaintiff bears the burden of proving the employer's intent to discriminate).

To survive a motion to dismiss, a complaint must include sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

According to the Amended Complaint, Baker alleged that in 2021 a white male supervisor, Kaz Kean, was being disrespectful to a black co-worker, Shevias Weary. R. Doc. 21 at 8, ¶33. Baker alleges that Mr. Kean called Mr. Weary stupid, which is a racially motivated derogatory statement, and that Mr. Kean was not terminated. *Id.* Instead, Baker alleges that Mr. Kean was moved to a different position and later made assistant manager. *Id.*

Baker also alleged that in or about February 2023, she was preparing the performance evaluation of her staff and complained to a white female assistant director, Cathy Tsagournos, and

another supervisor about white hires receiving more pay than she had even though she worked at Tulane for sixteen years. R. Doc. 21 at 6, ¶23. Baker alleges that she complained that she was not getting pay raises and the new hires were paid more income than she was. *Id.*

Additionally, Baker alleges that Mr. Kean, who was also a supervisor at the time and was similarly situated to Baker, was paid more than her. R. Doc. 21 at 6, ¶25. Baker alleges that Mr. Kean was also supervised by Ms. Tsagournos and that she was also responsible for Mr. Kean's pay raises. *Id.*

However, Baker does not indicate whether Mr. Kean's duties or position were similar to hers. To the contrary she alleges that he was a "supervisor" and subject to the same manager. R. Doc. 21 at 6, ¶25. There's no allegation as to how long Mr. Kean worked as a supervisor compared to Baker or that he performed the same work. Baker's conclusory assertion that she was denied similar compensation as Mr. Kean simply attempts to import legal language couched as a factual allegation and fails to raise a right to relief above the speculative level.

Additionally, Baker seemingly tries to suggest that Ms. Tsagournos, an assistant director who made more money than Baker, was also a comparator. However, she again provides no factual allegations showing the similarity of their positions and job duties. Therefore, the Court finds that Baker has not adequately stated a claim of equal pay discrimination based on her race or gender at the pleading stage.

### 2. *Sufficiency of Race and Gender Discrimination Claim – Disparate Treatment*

Tulane also seeks dismissal of Baker's race and gender discrimination claim of disparate treatment based on her termination. R. Doc. 24-1 at 15-17. Tulane contends that while Baker alleges an adverse employment action, she has failed to offer any allegation to support a finding that its decision to terminate her was based on her race or gender. *Id.* Tulane contends that because

12

her allegations do not raise a right to relief above the speculative level that her race and gender discrimination claim for disparate treatment should be dismissed. *Id.* at 10.

Baker contends that the amended complaint sufficiently alleges a race and gender discrimination claim based on Tulane's investigation and termination of her employment. R. Doc. 25 at 13-14. First she contends that two men made a complaint about inappropriate sexual and racial comments on the lockers in the men's locker room. *Id.* Her allegation of disparate treatment is allegedly based on the fact that only she was required to submit to a handwriting evaluation but that the men, one of whom was Caucasian, were not. *Id.* Baker contends that these allegations are sufficient to state a race and gender discrimination claim. *Id.*

"Disparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin. In such disparate-treatment cases, proof and finding of discriminatory motive is required." *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). "The well-established *McDonnell Douglas* framework applies to consideration of disparate treatment claims brought under Title VII, § 1981, and the LEDL." *Alleman v. Louisiana Dept. of Economic Development*, 698 F.Supp.2d 644, 656 (M.D. La. Mar. 17, 2010) (Riedlinger, M.J.) (citations omitted). To state a prima facie case of race or gender discrimination under this framework, "the plaintiff must demonstrate that she is: (1) a member of a protected class; (2) qualified for the position; (3) subject to an adverse employment action; and (4) after the adverse employment action her position was filled by someone from outside the protected class or that other similarly situated persons outside the protected class were treated more favorably." *Alleman,* 698 F.Supp.2d at 656. *Haire v. Bd. of Sup'rs of Louisiana State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013) (citing *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 350 (5th Cir. 2008)).

"[A] plaintiff need not make out a *prima facie* case of discrimination [under *McDonnell Douglas*] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. Louisiana State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Although plaintiffs do not "have to submit evidence to establish a prima facie case of discrimination at this stage, [they must] plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make [their] case plausible." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (emphasis added).

Baker does not allege any direct facts of a discriminatory motive. Cf. *Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 767-68 (5th Cir. 2019) (finding plaintiffs' direct factual allegations of derogatory remarks about race sufficient to plead discriminatory motive). Nor does she plead circumstantial facts supporting the inference that she was "similarly situated" to these male workers. See *Coleman v. Kijakazi,* No. 21-10399, 2023 WL 2660167, at *2 (5th Cir. 2023) ("For a comparator to be similarly situated, ... they must be 'under nearly identical circumstances'") (citation omitted); *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) ("A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications."); *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009) ("[E]mployees who have different work responsibilities ... are not similarly situated") (citation omitted).

It is true that when a plaintiff plausibly alleges similarly situated comparators, the Court must not scrutinize whether the comparators are "really 'similarly situated' " on a motion to dismiss. See *Cicalese,* 924 F.3d at 768 (involving allegations that two professors of surgery and medicine at a university medical center were similarly situated to other medical professors with allegedly less experience).

14

In this case, Baker, a supervisor, complains that the person who reported the presence of inappropriate sexual comments was a white male subordinate and contends that the comments were written with his deodorant stick in his locker. R. Doc. 21 at 3-4, ¶11-12. She alleges that a black male subordinate had a similar experience and that the comments were again written using the white male subordinate's deodorant stick. *Id*. at 4, ¶13-14. She complains that she was accused of writing the inappropriate comments in each instance. *Id*., ¶16. Baker further contends that the men who made the accusations should have been required to submit to a handwriting examination like she was but were not. *Id*. at 4-5, ¶18. Presumably because one alleged comparator was a white male, this forms the basis of Baker's race disparate treatment claim, and her gender claim is based upon the complaint made by both males.

However, Baker's Amended Complaint contains conclusory assertions that fail to raise a right to relief above the speculative level. The Amended Complaint is devoid of any allegation setting forth that these subordinates were similarly situated to the Baker or that the decision to require her to submit to a handwriting examination was the result of some discriminatory motive either based on race or gender. Due to the lack of any factual basis to support the existence of a similarly situated comparator and the absence of any facts requiring her to submit to a handwriting examination was based on a discriminatory motive, Baker's race and gender disparate treatment claims are subject to dismissal pursuant to Rule 12(b)(6).

For the reasons provided above, the Court finds that Baker has failed to state a claim for race or gender discrimination under Title VII, § 1981, or the LEDL and grants Tulane's request to dismiss Baker's claims for race and gender discrimination under these statutes.

## IV.  Conclusion

Accordingly,

**IT IS ORDERED** that the Defendant's **Motion to Dismiss (R. Doc. 24) is GRANTED.**

New Orleans, Louisiana, this 21st day of February 2025.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**